UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| ROBERT ALAN PEEL, | ) |
| | ) |
| plaintiff, | ) JURY TRIAL DEMANDED |
| | ) |
| v. | ) Case No. _____ |
| | ) |
| DECATUR MEMORIAL HOSPITAL, an | ) |
| Illinois not-for-profit corporation, | ) |
| | ) |
| defendant. | ) |

## COMPLAINT

Plaintiff Robert Alan Peel, by his undersigned counsel, alleges for his Complaint against defendant Decatur Memorial Hospital ("DMH"), an Illinois not-for-profit corporation, and demands a trial by jury, as follows:

### ALLEGATIONS COMMON TO ALL COUNTS

#### The Parties

1. Mr. Peel is a citizen of Illinois and is domiciled in, and resides, in Heyworth, McLean County, Illinois.

2. DMH is an Illinois not-for-profit corporation with its principal place of business located in Decatur, Illinois, is engaged in an industry affecting interstate commerce, and has fifteen or more employees, each working twenty or more calendar weeks in the current calendar year and in the calendar year preceding the events at issue in this case.

3. During all periods at issue in this case, DMH was operating a Nurse Anesthesia Program in association with Milliken University; formerly the program had been affiliated with Bradley University.

4. During all periods at issue in this case, Mr. Peel was a Registered Nurse, and an intern and employee of DMH.

### Jurisdiction and Venue

5. Federal subject matter jurisdiction exists over this case pursuant to 28 U.S.C. § 1331 in that this case arises under federal law — specifically, Titles VII of Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

6. Venue lies in this District pursuant to 28 U.S.C. § 1391(a) in that the parties reside in this District and that a substantial part of the events and omissions at issue in this case occurred in this District.

### The Background

7. Mr. Peel started as an intern-employee in the Nurse Anaesthesia Program at Decatur Memorial Hospital (the "Program") in June 2012.

8. As an intern-employee, Mr. Peel received substantial remuneration from DMH — including subsidization of his health insurance, free access to an affiliated gym, employee discounts and other benefits; in addition, Mr. Peel wore an employee badge and had access to employee-only areas and pass-codes, and DMH billed patients for his services.

9. Mr. Peel therefore qualified as an employee of DMH under Title VII.

10. At or about the time that Mr. Peel started the Program, one of the other participants in the Program (hereafter, the "Terminated Participant"), an African-American male who started the Program a year prior to Mr. Peel, was terminated (the original termination decision being on or about June 29, 2012, and the appeal of the decision being denied on or about August 1, 2012).

11. Mr. Peel believed that the Terminated Participant received the same remuneration from DMH as did Mr. Peel, and Mr. Peel also was aware that the Terminated Participant wore an employee badge and had access to employee-only areas and pass-codes, and that DMH billed patients for his services.

12. Mr. Peel therefore reasonably believed that the Terminated Employee was an employee of DMH under Title VII.

13. After learning that the Terminated Participant was the subject of termination proceedings, two Program staff members (Ms. Janet Butcher and Ms. Della Harpstripe) indicated — during a discussion that Mr. Peel was having with another staff member as to whether the Terminated Participant was being unfairly treated because he was black — that they believed that the Terminated Participant was being so treated because he was "too black."

14. Ms. Butcher was a member of the Progressions Committee that had initiated the termination proceedings against the Terminated Participant.

15. Mr. Peel indicated by his reaction that he was opposed to the Terminated Participant's having been terminated based on his race.

16. Shortly thereafter, Mr. Peel, in the presence of Lori Stone, the Assistant Program Director, indicated that he believed that the Terminated Participant was wrongfully dismissed because he was black.

17. Based on Ms. Stone's facial reaction to his statement, Mr. Peel accurately determined that Ms. Stone was displeased with Mr. Peel expressing his opposition to the discriminatory treatment of the Terminated Participant by DMH.

18. In the months following Mr. Peel's expressed opposition to the Terminated Participant's discriminatory treatment, Mr. Peel experienced retaliation for his opposition to the Terminated Participant's treatment through unwarranted negative reviews and being placed on probation for no legitimate reason.

19. On February 5, 2013, Rhonda Gee, the Program Director, told Mr. Peel that he was being terminated from the Program.

20. At the time that Ms. Gee, in retaliation for Mr. Peel's opposition to the treatment of the Terminated Participant, advised Mr. Peel of his dismissal, she also advised him that although he had the right to appeal, if he did so then she would fail him anyway, which would mean that he could not continue in the Program regardless of the outcome of his appeal.

21. Ms. Gee then informed Mr. Peel that his only viable alternative was to withdraw from the Program and thus not receive a failing grade.

22. Mr. Peel thus withdrew from the Program.

23. Mr. Peel's forced withdrawal from the Program by the Program Director was a direct result of his having opposed the discriminatory treatment of the Terminated Participant, who he believed had been dismissed from the Program due to racial discrimination.

Count I
Retaliation for Opposition to Unlawful Discrimination
(42 U.S.C.A. § 2000e-3)

24. Mr. Peel restates and incorporates the foregoing allegations of this Complaint as if fully realleged here.

25. DMH is an employer as defined by Title VII of the Civil Rights Act.

26. Mr. Peel was an intern and employee of DMH.

27. Mr. Peel reasonably believed that DMH engaged in unlawful discrimination, and he opposed such activity – i.e., the termination of the Terminated Participant based on his race.

28. DMH, including Ms. Gee, was aware that Mr. Peel opposed what he believed to be the unlawful treatment of the Terminated Participant.

29. Shortly following his opposition, Mr. Peel was dismissed from the Program.

30. But for Mr. Peel's opposition to what he perceived as DMH's unlawful activity, he would not have been terminated.

31. Mr. Peel has suffered financial and emotional damages as a result of being terminated from the Program.

WHEREFORE, Mr. Peel prays that, following a trial by jury, the Court enter judgment for him and against DMH for compensatory and punitive damages, as well as reinstatement into the Program, plus his attorneys' fees and costs, and that the Court grant him such other and further relief as the Court deems just and reasonable.

Dated: May 23, 2014

Respectfully submitted,

By: /s/ Jonathan A. Backman
      Jonathan A. Backman

Jonathan A. Backman (ID #6196243)
Law Office of Jonathan A. Backman
117 North Center Street
Bloomington, Illinois 61701-5001
(309) 820-7420
FAX: (309) 820-7430
jbackman@backlawoffice.com

*Attorney for Plaintiff Robert Alan Peel*